David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
LEISA WHITTUM

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| LEISA WHITTUM, | : Civil Action No.: _____ |
| Plaintiff, | : |
| v. | : |
| SNAPFINANCE INC., | : **COMPLAINT** |
| Defendant. | : |

For this Complaint, the Plaintiff, LEISA WHITTUM, by undersigned

counsel, states as follows:

## <u>JURISDICTION</u>

1.     This action arises out of Defendant's repeated violations of the Fair

Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), and the

harassment of Plaintiff by the Defendant and its agents in their illegal efforts to

collect a consumer debt and jurisdiction is therefore proper in this Court pursuant

to 28 U.S.C. § 1331.

2.    Further, Defendant negligently, knowingly, and/or willfully placed automated calls to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

3.    Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's TCPA and state law claims. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740 (2012).

4.    This action is also brought under Nevada Revised Statutes Chapter 598.0918 ("NRS 598") and Nevada Revised Statutes Chapter 41.600 *et seq.* ("NRS 41.600") for Defendant's deceptive trade practices as further described herein.

5.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

## PARTIES

6.    The Plaintiff, LEISA WHITTUM ("Plaintiff" or "Ms. Whittum"), is an adult individual residing in Las Vegas, Nevada, and is a "consumer" as the term

is defined by 15 U.S.C. § 1692a(3).

7.      Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

8.      Defendant SNAPFINANCE INC.  ("SNAPFINANCE"), is doing business in the State of Nevada as a business entity operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

9.      Defendant is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

10.     SNAPFINANCE at all times acted by and through one or more of its debt collectors or other agents (the "Collectors").

## ALLEGATIONS APPLICABLE TO ALL COUNTS

### The Debt

11.     Plaintiff allegedly incurred a financial obligation (the "Debt") to CASH 1, LLC (the "Creditor").

12.     The Debt arose from services provided by the Creditor which were primarily for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

13.     The Debt was purchased, assigned or transferred to SNAPFINANCE for collection, or SNAPFINANCE was employed by the Creditor to collect the Debt.

14.     The Defendant attempted to collect the Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

## SNAPFINANCE Engages in Illegal Collection Tactics

## FACTS

15.     Struggling to meet her financial obligations and due to work hours having been cut without notice, the Plaintiff defaulted on her obligation to CASH 1, LLC on or about June 24, 2016 when the Plaintiff missed her scheduled payment and defaulted.

16.     The Debt was thereafter purchased, assigned or transferred to SNAPFINANCE for collection, or SNAPFINANCE was employed by CASH 1, LLC to collect the Debt.

17.     As a debt collector, SNAPFINANCE's rights were no greater than CASH 1, LLC's rights to enforce and/or collect the Debt.

18.     In late June 2016 and again on June 30, 2016, the Plaintiff instructed CASH 1, LLC to stop calling her cell phone.

19.     Despite Plaintiff's requests and her revocation of consent (if any ever existed to call her at all, let alone her cell phone),  SNAPFINANCE continued to call Plaintiff attempting to collect the debt. Indeed, SNAPFINANCE acted as though the cease and desist requests had not happened, entirely ignoring the Plaintiff's requests.

20.     On or about July 1, 2016, Plaintiff retained the services of an attorney to assist her with managing her obligations, like the debt owed to CASH 1, LLC, and to assist her in ending the harassment she was enduring as a result of SNAPFINANCE's debt collection practices.

21.     Within twenty-four (24) hours after retaining counsel, Plaintiff contacted SNAPFINANCE and instructed SNAPFINANCE to stop calling her and told SNAPFINANCE that she was represented by an attorney.

22.     The Plaintiff also provided SNAPFINANCE with her attorney's contact information.

23.     On or about July 2, 2016, SNAPFINANCE contacted the Plaintiff to collect the Debt and Plaintiff again instructed SNAPFINANCE to contact her attorney only and to stop calling the Plaintiff.

24.     Notwithstanding SNAPFINANCE's notice of Plaintiff's attorney representation, SNAPFINANCE continued communications with the Plaintiff and continued calling her, in violation of her requests, in it's attempt to collect the Debt.

25.     In fact, even after the above, SNAPFINANCE placed numerous collection calls to the Plaintiff's cell phone on a daily basis to collect the Debt.

26.     On several occasions, SNAPFINANCE called the Plaintiff's cell phone  multiple times on the same day to try to collect the debt by harassing and annoying the Plaintiff.

27.     Plaintiff's repeated requests to SNAPFINANCE to cease calling her and direct communications to her attorney were to no avail;  the abusive and annoying calls continued.

28.     Specifically, SNAPFINANCE placed at least the following calls to Plaintiff's cellular phone after her demands that SNAPFINANCE cease calling her cell phone:

- June 28, 2016 at 11:51 a.m. CDT

- June 28, 2016 at 2:33 p.m. CDT

- June 28, 2016 at 4:04 p.m. CDT

- June 29, 2016 at 10:23 a.m. CDT

- June 29, 2016 at 5:11 p.m. CDT

- June 30, 2016 at 10:14 a.m. CDT

- June 30, 2016 at 3:13 p.m. CDT

- June 30, 2016 at 4:45 p.m. CDT

- July 1, 2016 at 11:34 a.m. CDT

- July 1, 2016 at 3:03 p.m. CDT

- July 1, 2016 at 4:44 p.m. CDT

- July 5, 2016 at 3:30 p.m. CDT

- July 6, 2016 at 10:36 a.m. CDT

- July 6, 2016 at 6:39 p.m. CDT

- July 7, 2016 at 10:54 a.m. CDT

- July 8, 2016 at 12:45 p.m. CDT

- July 8, 2016 at 2:36 p.m. CDT

- July 8, 2016 at 5:46 p.m. CDT

- July 9, 2016 at 10:50 a.m. CDT

- July 11, 2016 at 10:25 a.m. CDT

- July 12, 2016 at 11:35 a.m. CDT

- July 12, 2016 at 1:14 p.m. CDT

- July 12, 2016 at 3:56 p.m. CDT

- July 13, 2016 at 3:59 p.m. CDT

- July 14, 2016 at 12:03 p.m. CDT

- July 14, 2016 at 2:11 p.m. CDT

- July 14, 2016 at 4:33 p.m. CDT

- July 15, 2016 at 12:42 p.m. CDT

- July 15, 2016 at 3:05 p.m. CDT

29.    This lawsuit results.

## **Plaintiff Suffered Actual Damages**

30.    The Plaintiff has suffered and continues to suffer actual damages as a result of SNAPFINANCE's unlawful conduct.

31.    As a direct consequence of Defendant's acts, practices and conduct,

the Plaintiff suffered and continues to suffer from anger, anxiety, emotional

distress, frustration, rage, headaches, an upset stomach, heart palpitations, and has

otherwise been totally annoyed by Defendant's intrusive and illegal collection

calls.  Plaintiff has also lost the use of personal and family time while enduring

these frustrations, as well as lost time and minutes from cell phone use, for which

the Plaintiff is charged a fee.

## Respondeat Superior Liability

32.    The acts and omissions of SNAPFINANCE, and the other debt

collectors employed as agents by SNAPFINANCE who communicated with Plaintiff

as more further described herein, were committed within the time and space limits of

their agency relationship with their principal, Defendant SNAPFINANCE.

33.    The acts and omissions by SNAPFINANCE and these other debt

collectors were incidental to, or of the same general nature as, the responsibilities

these agents were authorized to perform by SNAPFINANCE in collecting consumer

debts.

34.    By committing these acts and omissions against Plaintiff,

SNAPFINANCE and these other debt collectors were motivated to benefit their

principal, Defendant SNAPFINANCE.

35.    SNAPFINANCE is therefore liable to Plaintiff through the Doctrine of

Respondeat Superior for the intentional and negligent acts, errors, and omissions

done in violation of state and federal law by its collection employees, including but

not limited to violations of the FDCPA and Nevada tort law, in their attempts to

collect a debt from Plaintiff.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

36.    In 1991, Congress enacted the TCPA in response to a growing number

of consumer complaints regarding certain telemarketing practices.

37.    The TCPA regulates, among other things, the use of automated

telephone dialing systems.

38.    47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system

("ATDS") as equipment having the capacity –

> (A)    to store or produce telephone numbers to be called,
> using a random or sequential number generator; and

> (B)    to dial such numbers.

39.    Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an

ATDS or an artificial or prerecorded voice to a cellular phone without prior

express consent by the person being called, unless the call is for emergency

purposes.

40.    According to findings by the Federal Communications Commission

("FCC"), such calls are prohibited because automated or prerecorded telephone

calls are a greater nuisance and invasion of privacy than live solicitation calls.  The

FCC also recognized that wireless customers are charged for incoming calls.[1]

41.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls are made with the "prior express consent" of the called party.[2]

42.     On July 10, 2015, the FCC issued FCC Order 15-72, wherein the FCC[3] stated that "[a] caller may not limit the manner in which revocation [of prior express consent to call] may occur" and that the "burden is on the caller to prove it obtained the necessary prior express consent".  *Id*. at ¶ 30.

43.     Further, consumers (like the Plaintiff) may revoke consent through any reasonable means.  *Id*. at ¶ 47.

44.     Nothing in the language of the TCPA or its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent.  *Id*. at ¶ 58.

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[3] See Declaratory Ruling and Order, Adopted June 18, 2015 and Released July 10, 2015 regarding *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf).

45.     Indeed, some consumers may find unwanted intrusions by phone more offensive than home mailings because they can cost them money and because, for many, their phone is with them at almost all times. *Id*. at ¶ 61.

46.     Consumers have a right to revoke consent, using any reasonable method including orally or in writing.  *Id*. at ¶ 64.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

47.     Within the four years prior to filing the instant complaint, the Plaintiff received numerous calls from the Defendant from the following phone numbers: (XXX)-XXX-0389, (XXX)-XXX -8539, and XXX-XXX-6640.

48.     Upon information and belief, Defendant employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1).

49.     In the calls that Plaintiff did answer, there would be a short pause lasting about two to three seconds between the time the calls were answered and the time that a live agent introduced themselves as a representative from Defendant.

50.     Upon information and belief, based on the pause and lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used a predictive dialing system to place calls to Plaintiff.

51.     "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will

be available to take calls. The hardware, when paired with certain software, has the

capacity to store or produce numbers and dial those numbers at random, in sequential

order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*,

707 F.3d 1036, 1043 (9th Cir. 2012).

52.     The FCC has determined that predictive dialing systems are a form of

an automatic telephone dialing system. *Id.*

53.     Upon information and belief, the predictive dialing system employed by

Defendant transfers the call to a live agent once a human voice is detected, thus

resulting in a pause after the called party speaks into the phone.

54.     Defendant or its agent/s contacted Plaintiff on Plaintiff's cellular

telephone number ending in "0708" via an ATDS as defined by 47 U.S.C. §

227(a)(1), as prohibited by 47 U.S.C. § 227(b)(1)(A).

55.     In early June 2016 and again on June 30, 2016, the Plaintiff instructed

CASH 1, LLC (the underlying creditor) to stop calling her and thereby revoked her

consent.

56.     The Plaintiff's revocation was binding on successors in interest to the

Debt such as SNAPFINANCE.

57.     Even so, on or about June 28, 2016, Plaintiff instructed

SNAPFINANCE or its agent(s) not to call the Plaintiff's cell phone ever again

thereby revoking consent, which no longer existed in any event resulting from the CASH 1 revocation, to be contacted by Defendant via an ATDS.

58.     On or about July 1, 2016, in addition to advising Defendant to send all future communications through her counsel, Plaintiff once again (second time) instructed SNAPFINANCE or its agent(s) not to call the Plaintiff's cell phone ever again thereby again revoking consent to be contacted by Defendant via an ATDS.

59.     On or about July 7, 2016, Plaintiff once again (third time) instructed Defendant SNAPFINANCE or its agent(s) not to call the Plaintiff's cell phone ever again thereby revoking consent to be contacted by Defendant via an ATDS.

60.     However, Defendant placed calls to the Plaintiff's cellular telephone without consent using an ATDS in violation of the TCPA.

61.     Defendant's ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

62.     The telephone number that Defendant used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

63.     Defendant's calls to Plaintiff's cellular telephone were not for "emergency purposes."

64.     Pursuant to the TCPA and the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that it had prior express consent to call

Plaintiff's cellular phone with an ATDS.

65.    The Plaintiff suffered actual harm and loss, since the unwanted calls depleted the Plaintiff's cell phone's battery, and the cost of electricity to recharge the phone is a tangible harm.  While small, this cost is a real one, and the cumulative effect can be consequential, just as is true for exposure to X-rays resulting from the Defendant's unwanted phone calls to the Plaintiff's cell phone.

66.    Plaintiff also suffered from an invasion of a legally protected interest by placing calls to the Plaintiff's personal phone line when the Defendant had no right to do so, resulting in an invasion of Plaintiff's right to privacy.  The TCPA protects consumers from this precise behavior.

67.    Plaintiff has a common law right to privacy.  *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

68.    Plaintiff was also personally affected, since the Plaintiff felt that the Plaintiff's privacy had been invaded when the Defendant placed calls to the Plaintiff's phone line without any consent to do so.

69.    The injury suffered by Plaintiff is concrete because Defendant's violations caused Plaintiff to suffer an invasion of privacy.

///

## COUNT I

### Violations of the FDCPA
### (15 U.S.C. § 1692 *et seq.*)

70.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71.     The Defendant's conduct violated 15 U.S.C. § 1692c(a)(2) in that Defendant contacted the Plaintiff after it knew Plaintiff was represented by an attorney.

72.     The Defendant's conduct violated 15 U.S.C. § 1692d  in that Defendant engaged in behavior the natural consequence of which was to harass, oppress, or abuse the Plaintiff in connection with the collection of a debt.

73.     The Defendant's conduct violated 15 U.S.C. § 1692d(5) in that Defendant caused the Plaintiff's phone to ring and/or engaged the Plaintiff in telephone conversations repeatedly or continuously with the intent to annoy, abuse or harass the Plaintiff in connection with the collection of a debt.

74.     The Defendant's conduct violated 15 U.S.C. § 1692f in that Defendant used unfair and unconscionable means to collect a debt and attempted to humiliate and belittle Plaintiff.

75.     The foregoing acts and omissions of the Defendant constitute numerous and multiple violations of the FDCPA, including every one of the above-

cited provisions.

76.     The Plaintiff is entitled to damages as a result of Defendant's violations.

77.     The Plaintiff has been required to retain the undersigned as counsel to protect his legal rights to prosecute this cause of action, and is therefore entitled to an award or reasonable attorneys' fees plus costs incurred.

## COUNT II

### Negligent Violations of the
### Telephone Consumer Protection Act,
### (47.S.C. § 227, *et seq*.)

78.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

79.     Defendant negligently placed multiple automated calls to a cellular number belonging to Plaintiff without Plaintiff's prior express consent.

80.     Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

81.     As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

82.     Additionally, Plaintiff is entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT III

### Knowing and/or Willful Violations of the
### Telephone Consumer Protection Act,
### (47.S.C. § 227, *et seq.*)

83.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

84.     Defendant knowingly and/or willfully placed multiple automated calls to a cellular number belonging to Plaintiff without Plaintiff's prior express consent.

85.     Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

86.     As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

87.     Additionally, Plaintiff is entitled to seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT IV

### Defendant's Violations of Nevada's
### Deceptive Trade Practices Act
### (NRS 598.0918)

88.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

89.     "Solicitation" means "the act of . . . seeking to obtain" something – in

this case money.  *Solicitation*, Black's Law Dictionary (2d Pocket Ed. 2001).

90.     Here, the Defendant solicited the Plaintiff to seek or obtain money from the Plaintiff.

91.     On March 13, 2001, Assembly Bill 337 (AB 337) was introduced to the Nevada State Legislature.  AB 337 revised Nevada's Deceptive Trade Practices statutes codified at NRS 598 et seq.

92.     As expressed by Marilyn Skibinski, Regulatory Analyst, Bureau of Consumer Protection, AB 337 was enacted to "provide[] additional protection for consumers."  *See Minutes of the Meeting of the Assembly Committee on Commerce and Labor*, 71st Session, April 4, 2001, page 1082, which can be viewed at http://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/2001/AB337,2001.pdf (the "AB 337 Minutes").

93.     Further, AB 337 was specifically intended to apply to companies (like the Defendant) using "automatic calling" or automated dialing systems.  As Ms. Rushton stated in response to Senator Maggie Carlton, "[that] is exactly what [AB 337 is intended to do."  *Id*. at page 4093.

94.     In specific, AB 337 made it a deceptive trade practice to, during a solicitation by telephone, to:

   a. Repeatedly or continuously conduct the solicitation or presentation in a manner that is considered by a reasonable person to be annoying, abusive or harassing;
   b. Solicit a person by telephone at his or her residence between 8 p.m.

and 9 a.m.

    c.  Block or otherwise intentionally circumvent any service used to identify the caller when placing an unsolicited telephone call; or

    d.  Place an unsolicited telephone call that does not allow a service to identify the caller by the telephone number or name of the business, unless such identification is not technically feasible.

95.    Specifically, Defendant placed calls to Plaintiff's residential cell phone even after the Plaintiff demanded Defendant cease calls to the Plaintiff. Such conduct is unquestionably harassing and annoying.

96.    As a direct consequence of Defendant's harassing phone calls, acts, practices and conduct, the Plaintiff suffered and continues to suffer from anger, anxiety, emotional distress, frustration, rage, headaches, an upset stomach, heart palpitations, and has otherwise been totally annoyed by Defendant's intrusive and illegal phone calls.  Plaintiff has also lost the use of personal and family time while enduring these frustrations, as well as lost time and minutes from cell phone use, for which the Plaintiff is charged a fee.

97.    Defendant therefore violated NRS 598.0918(2).

98.    Defendant's violations of NRS 598.0918 constitute violations of NRS 41.600 and the Plaintiff is entitled to relief under NRS 41.600.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that judgment be entered against the Defendant awarding the Plaintiff:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

3. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

4. Actual damages including, but not limited to, the emotional distress the Plaintiff has suffered (and continues to suffer) as a result of the intentional, reckless, and/or negligent FDCPA violations pursuant to 15 U.S.C. § 1692k(a)(1);

5. Statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A);

6. Actual damages including, but not limited to, the emotional distress the Plaintiff has suffered (and continues to suffer) as a result of the intentional, reckless, and/or negligent violations of NRS 598.0918 as permitted under NRS 41.600;

7. Punitive damages;

8. An award of attorney's fees and costs to counsel for Plaintiff; and

///

9.  Such other relief as the Court deems just and proper.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: October 27, 2016

Respectfully submitted,
By: /s/ David H. Krieger, Esq.
David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*LEISA WHITTUM*